HOTCHKISS, Sheriff, &c. *against* M'VICKAR.

THIS was an action of *trover*, for a fishing net, tried at the *A sheriff cannot maintain trover for goods tortiously taken out of the possession of the party against whom the execution issued, after the teste, but before the delivery of the execution to, and a seizure of them by, him. The statute of frauds, by which the goods of the debtor are bound from the delivery of the writ of execution to the sheriff, does not alter the property of the goods; but before and since the statute, the property in the goods continues in the defendant until execution executed.* Columbia circuit, in 1814, before Mr. Justice *Van Ness.*

On the 6th of *July*, 1814, and long previous, the net was the property of *Garret Claw*, against whom a writ of *fieri facias* issued the 7th of *July*, 1814, on a judgment against him, in favour of *John P. Beekman.* On the 6th of *July*, the day previous to the delivery of the writ to the deputy sheriff, the defendant, without the leave of the plaintiff, took away the net from the place where it had been left by *Claw.* The execution was tested in *May* term, and returnable in *August* term, 1814. The defendant had applied to *Claw* for leave to take the net, which he refused, observing, that he had given a judgment bond to *Beekman.*

The deputy sheriff, on receiving the execution, went in search of the net, and learning that the defendant had taken it, demanded it of him, by virtue of the execution against *Claw.* The defendant admitted that he had taken the net, but refused to deliver it to the deputy sheriff.

A verdict was taken for the plaintiff, subject to the opinion of the court on the above case.

*Vanderpool*, for the plaintiff. 1. The property was bound from the *teste* of the execution; and the defendant, being a wrong-doer, cannot assert any right against the sheriff. The rule of the common law, except as to *bona fide* purchasers, remains the same as before the statute of 29 *Car.* II. ch. 3. s. 16. That statute was made to protect *bona fide* purchasers only. As to all other persons, the execution binds the property from the *teste* of the writ.*

2. Then, can the sheriff, before actual possession, maintain *trover* for the goods of the defendant, wrongfully taken away? To maintain *trover*, an absolute or general property in the goods is sufficient, though the plaintiff has never had the actual possession.† If a person has the right of possession, the law implies possession. As it respects *Claw*, the debtor, the sheriff had the absolute property against all the world. In regard to

* 1 Saund. 219. f. note, 10 Vin. Ab. 567. Execution. (A. a) s. 14, 15, 16. Comb. 145. 2 Shower, 485. 12 Mod. 5. Ld. Raym. 252. 2 Tidd's Pr. 914.

† 2 Saund. 47. a. note (1). Gordon v. Harper, 7 Term Rep. 18.

NEW-YORK,
Oct. 1815.

HOTCHKISS
v.
M'VICKAR.

*1 Bos. & Pull.
44—47.

a bankrupt, it was held, in *Fowler* v. *Down*,* that he had a right against every body, but his assignees ; and that it was not competent to a third person to dispute the bankrupt's title. The assignees may maintain *trover* for goods of the bankrupt, taken by a sheriff on execution, subsequent to the act of bankruptcy, and prior to the commission and assignment ; for the property is held to be in the assignees, by *relation*, from the time

† *Cooper and o-thers* v. *Chitty and others*, 1 *Burr.* 20—33.

the act of bankruptcy was committed.† The *gist* of this action is the *wrongful conversion*.

1 7 *Term Rep.* 9.
3 *Lev.* 309.
*Chitty's Pl.* 150.

§ 1 *Chitty's Pl.* 151. 2 *Saund.* 47 a. note 1.
‖ 8 *Johns. Rep.* 548.

** 1 *Caines' Rep.* 18.

†† 4 *East*, 214.

‡‡ 4 *East*, 523.

‖‖ *Schermerhorn* v. *Volkenburgh*, 11 *Johns. Rep.* 529. *Barker* v. *Miller*, 6 *Johns. Rep.* 195. 2 *Saund.* 47. a. 2 *Tidd's Pr.* 925.

*Bronk*, contra. It is an established principle, that to maintain *trover*, the plaintiff must have the actual possession, or right to possession, as well as the right of property.‡ A sheriff who receives an execution, does not thereby acquire an absolute or general property in the goods of the debtor, but merely a special property by the seizure ; and he stands on the same ground, as to his right of action, as a factor, consignee, or trustee.§

In *Jackson* v. *Catlin*,‖ it is said that the sheriff may maintain trover, or trespass, on account of the *special* property he acquires in the goods *by the seizure*. In *Heyl* v. *Burling*,** the court said that, in this action, there must be the right of property and possession, or right of possession, in the plaintiff. Possession must accompany the special property.†† The plaintiff must have an interest in the goods, arising either from the right of property, or possession. The sheriff, by the delivery of the execution to him, acquires no interest in the property of the defendant ; he acts under the authority of the writ, and as the agent of the law to execute its judgment. He can acquire no interest or property in the goods of the debtor, until he has made an actual seizure. It is true, that by the common law, the goods of the debtor were bound from the *teste* of the execution, and by our statute, from the delivery of the writ to the sheriff. But because the property of the debtor is so bound, it does not follow that the sheriff acquires an interest in them before seizure. The law gives him only a right to seize those goods. In *Payne* v. *Drew*,‡‡ all the cases on the subject are examined by Lord *Ellenborough*, who delivered the opinion of the court of K. B. that though the delivery of the *fi. fa.* binds the goods of the debtor, yet the property in the goods is not divested out of him, until execution executed.§§ A subsequent execution, first levied, will defeat a

prior execution first delivered to the sheriff.* In *Bliss* v. *Bull*,† it was decided, that if a sheriff sells property after the return day of the execution, without a previous seizure, he is a trespasser. But how can he be considered a trespasser, if he was vested with such a special property, by the delivery of the *fi. fa.* to him, that he could maintain trover?

Again, an action is given to the sheriff only, for his indemnity, and because he is liable over to the plaintiff, in the execution. But if the sheriff, in this case, returns *nulla bona*, would he be liable? If not, he is not damnified, and cannot, therefore, have any right of action. As soon as the goods are seized, the sheriff may have the amount endorsed on the execution, and will be so far discharged. But, in this case, could he make such an endorsement?

Again, a sheriff cannot sue for property which he cannot levy upon; and he cannot levy an execution after the return day. In *trover*, the defendant may bring the goods into court,‡ if they are susceptible of it. And, suppose the defendant had brought the net into court, could the plaintiff levy on it, or seize it, by virtue of the execution, after the return day?

The cases under the bankrupt laws of England, depend on the peculiar provisions of those laws.

*Vanderpool*, in reply. I go on the ground of the common law, as it existed before the statute; for all the cases agree that, as between the sheriff and the party, the common law has not been altered by the statute, which protects *bona fide* purchasers only. By the common law the goods were bound from the *teste* of the execution, and the sheriff might take them out of the hands of a *bona fide* purchaser.§ If so, must not the property or right of possession be in the sheriff before seizure? This title to the possession commences with the *teste* of the execution, by relation. In *Rorke* v. *Dayrell*,‖ Lord *Kenyon* says, that, " as by the common law, abridged as it is by the statute of frauds, the property of the debtor's goods is bound by the delivery of the writ to the sheriff; there then remains no property in the debtor."(a) The case of *Payne* v. *Drew*, was that of two contending creditors, and the maxim of *vigilantibus, non dormientibus, leges subveniunt*, applied. That case is clearly dis-

(a) See the observations of Lord *Ellenborough* on this *dictum* of Lord *Kenyon*, in 4 *East*, 541. (*Payne* v. *Drew*.)

---

Margin notes:

NEW-YORK, Oct. 1815.

HOTCHKISS v. M'VICKAR.

* *Ante*, 162. *Sandford* v. *Roosa.* † 9 *Johns. Rep.* 132.

‡ 3 *Burr.* 1363. 7 *Term Rep.* 52.

§ *Anonymous*, Cro. Eliz. 174. *Borcher* v. *Wiseman*, Cro. Eliz. 440.

‖ 4 *Term Rep.* 402—411.

tinguishable from the present, which is between the sheriff and the party.

A person having the special property, without the *actual* possession, may maintain trover against a mere stranger, or *tort feasor.*[*]

*Trover* is, in fact, a special action on the case; and who is it that objects to the plaintiff's title to maintain this action? Not a *bona fide* purchaser, but a mere wrong doer, a trespasser.

[*] 1 *Chitty's Pl.* 151. 2 *Saund.* 47. c. 2 *Roll's Abr.* 569. *Fowler* v. *Down,* 1 *Bos. & Pull.* 44. per *Eyre,* Ch. J. 7 *Term Rep.* 9—13.

SPENCER, J., delivered the opinion of the court. It is too late to question the construction which has been uniformly given to the statute of 29 *Car.* II. ch. 3. s. 16., which enacts, " that no writ of *fi. fa.*, or other writ of execution, shall bind the property of the goods of the party against whom such writ of execution is sued forth, but from the time that such writ shall be delivered to the sheriff," &c. That construction has been, that the statute being made to protect purchasers, does not alter the law, as between the parties; and the common law, prior to the statute, was, that the *fi. fa.* had relation to its *teste*, and bound the defendant's goods from that time; so that if the defendant had afterwards sold them, though *bona fide*, and for a valuable consideration, they were still liable to be taken in execution. (2 *Tidd's Pr.* 914, 915., and the note, 7 *T. R.* 21., and the case of *Parson* v. *Gill*, in the notes. 1 *Saund.* 219. (*f.*) 10 *Vin. Abr.* 566, *Comb.* 145. 2 *Eq. Cas. Abr.* 381.) To remedy the unjust effect of the relation of a *fi. fa.* to its *teste*, which produced great mischief to purchasers, the statute was passed. Our statute (1 *R. L.* 501. s. 6.) is substantially a transcript of the *British* statute.

The goods in question were then bound by the execution in the plaintiff's hands, at the time the defendant took them away.

The only remaining inquiry is this; can the plaintiff, who never levied on the goods, maintain an action for the conversion of them, when they were, in fact, taken tortiously by the defendant before the plaintiff received the execution, on the ground that they were bound by the execution in consequence of the *teste* being prior to the defendant's taking them?

To entitle a party to maintain *trover*, two things are necessary: 1st. Property in the plaintiff; and, 2d. A wrongful conversion by the defendant. The plaintiff's property may be general,

or special. A carrier, bailee, or the person who finds a chattel, has, in regard to his possession, sufficient property to entitle him to maintain the action. A sheriff who has seized goods on a *fi. fa.*, may maintain this action against any person who takes them away, and converts them, before a sale. (2 *Saund.* 47.)

I have not met with a case which shows that an action of *trover* can be maintained by a sheriff, for goods tortiously taken out of the possession of the party, against whom the execution issued, before the execution comes to the hands of the sheriff, and where he has never levied on the goods. It has been repeatedly held, that neither before, nor since the statute, the words " bound from the delivery of the writ to the sheriff," alter the property, of the goods; but it continues in the defendant until the execution is executed. This construction was given by Lord *Hard-wicke* to the statute, in *Lowthal* v. *Tonkins*, (2 *Eq. Cas. Abr.*, 381.) This, also, was Lord *Ellenborough's* opinion in *Payne* v. *Drew*, (4 *East*, 536, 537.)

If the goods are rescued, the sheriff may return that they are rescued, and he will not be liable. (1 *Ventr.* 52, 1 *Brownlow*, 132.) This shows that the property did not vest in him; indeed, the execution creates the lien, for the benefit of the creditor; and the sheriff is the mere minister of the law, to procure for the creditor, satisfaction of the debt; and to this end, the sheriff is invested with the right, after he has found the property and levied on it, to hold possession until a sale; and if that possession is violated, he may maintain *trespass* or *trover*.

It has been uniformly held in this court, that an actual levy of a *fi. fa.* was necessary. Thus, in *Devoe* v. *Elliot*, (2 *Caines*, 143.) it was decided, that where a sheriff has levied an execution, in due time, he may complete the same by sale, but cannot levy after the return day. So again, in *Bliss* v. *Ball*, (9 *Johns. Rep.* 132.) a levy was considered an essential requisite. The reason given by *Chitty*, (1 *Chit. Pl.* 151.) why a sheriff, carrier, factor, &c., may maintain *trover*, in consequence of their special property in goods taken out of their possession, is quite satisfactory, and reasonable. It is because they are responsible over to their principal.

In the present case, the plaintiff, as we have seen, cannot be considered as having the general property; and, in my judgment, he never had a special property. In such a case, that species of property can alone arise from possession.

The execution, I agree, had a retrospective operation. The goods, in this case, being bound from the *teste*, gave the sheriff a right to reduce the goods to possession, if he could have levied on them; but he could not find them. Would the sheriff be liable to the party in whose favour the execution was, under the facts in this case? I conceive, most clearly, not; and it seems to me, that consideration furnishes a decisive criterion; for if the sheriff is not liable to the plaintiff in the execution, *cui bono* is he prosecuting this action? Not to protect himself from any liability over, but to gain to himself something which, for aught I see, would be his own, when recovered.

On the principle, therefore, that a levy was necessary to constitute a special property in the plaintiff, in the goods, and that no levy has ever been made, the defendant is entitled to judgment.

Judgment for the defendant.