**In re NEW LIFE BUILDERS, INC., Debtor.**

**Thomas A. Dorey, As Trustee in Bankruptcy of New Life Builders, Inc., Plaintiff,**

**v.**

**Perfetti Builder's Hardware, Inc., 1655 Third Avenue, Niagara Falls, New York 14304, Defendant.**

**Bankruptcy No. 97–10726 B.**
**Adversary No. 99–1018 B.**

United States Bankruptcy Court, W.D. New York.

Nov. 18, 1999.

Donald H. Michalak, Fredonia, NY, for Plaintiff–Trustee.

Bloom, Neubeck & Shonn, LLP, Eric A. Bloom, of counsel, Buffalo, NY, for Defendant.

CARL L. BUCKI, Bankruptcy Judge.

In this adversary proceeding, the chapter 7 trustee seeks to recover an allegedly preferential levy against a bank account of the debtor. The present motions focus upon the requirement of 11 U.S.C. § 547(b)(4)(A), that the transfer be made "on or within 90 days before the date of the filing of the petition." At issue is the date of transfer. Specifically, did a transfer occur when the sheriff actually recovered funds or at some earlier point in the process of executing the defendant's judgment?

Between September 8 and October 27 of 1995, New Life Builders, Inc., ("New Life") purchased various building supplies from Perfetti Builder's Hardware, Inc. ("Perfetti"). When New Life thereafter failed to complete payment of its account, Perfetti commenced an action against New Life in the Supreme Court for Erie County, New York. Ultimately, a judgment in the amount of $10,756.14 was entered in Perfetti's favor on October 16, 1996. As allowed by New York law, Perfetti's attorney then served a restraining notice on Lake Shore Savings & Loan Association. With a hold thereby being placed on accounts that New Life maintained at that bank, Perfetti delivered an execution to the Chautauqua County sheriff, who then served a notice of levy upon Lake Shore Savings & Loan Association on November 12, 1996, Responding to this levy, Lake Shore issued a check to the sheriff on November 14, 1996, in the amount of $6,831.61. The sheriff then remitted these funds to Perfetti.

New Life Builders, Inc., the debtor herein, filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 11, 1997. Thus, the ninetieth day prior to the filing of the bankruptcy petition was November 13, 1996. Believing that a transfer of the debtor's property occurred one day later when Lake Shore issued its check to the sheriff, the case trustee commenced the present action to recover that payment as a preference. In its answer, Perfetti asserted as an affirmative defense that the transfer occurred prior to November 13, either when counsel served the restraining notice on October 28 or when the sheriff served the notice of levy on November 12. The case trustee has now moved to dismiss this affirmative defense, and in his response, Perfetti has cross-moved to dismiss the complaint.

Section 547 of the Bankruptcy Code establishes the standards for recovery of preferences. Subdivision (e) of this section contains several rules defining the occurrence of a transfer. Although preferences are purely creations of federal statute, these rules of transfer look to state law to settle their essential components. *Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). For purposes of the present controversy, the starting point for our analysis is 11 U.S.C. § 547(e)(2). In relevant part, it provides that for purposes of section 547,

A transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time . . .;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—(i) the commencement of the case; or (ii) 10 days after such transfer takes effect between the transferor and the transferee.

Thus, the occurrence of a transfer will relate to the perfection of that transfer. Under each of the three alternatives in subdivision (e)(2), the transfer is deemed to have occurred no later than the point of perfection. Perfection is defined in subdivision (e)(1)(B), which provides that a

transfer of personal property "is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

Under New York law, Perfetti acquired a lien on the debtor's personal property when Perfetti delivered the execution to the sheriff at a date more than ninety days prior to the filing of the bankruptcy petition. This rule is well summarized by New York Jurisprudence 2nd:

> [A] lien is obtained upon the personal property of the judgment debtor, except upon such property as is exempt, when the execution has been actually delivered to the sheriff to be executed. Moreover, the lien upon the personal property arises, not when a levy is made, but at the moment when the execution is delivered to the officer.

54 N.Y. Jur.2d *Enforcement of Judgments* § 158 (1986). *See Baker v. Hull*, 250 N.Y. 484, 488, 166 N.E. 175 (1929). Bankruptcy courts have ruled similarly. For example, in *In re Marceca*, 129 B.R. 369, 370 (Bankr.S.D.N.Y.1991), Judge Howard Schwartzberg concluded that in New York, "the judgment creditor acquires a lien on personal property of the debtor when the execution is delivered to the sheriff." This general rule, however, requires some refinement. Although delivery of the execution to the sheriff will create a lien, the court must further inquire whether that lien is perfected under the standard of 11 U.S.C. § 547(e)(1)(B). Specifically, under the New York statute, could another creditor on a simple contract still have acquired a judicial lien that is superior to that of Perfetti? Before answering this question, we must place the issue into the context of New York law relative to enforcement of money judgments.

Article 52 of the Civil Practice Law and Rules contains the statutory provisions for the enforcement of money judgments in New York State. Subdivision (a) of section 5202 defines an execution creditor's rights in personal property:

> Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor's rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property, except:
>
> 1. A transferee who acquired the debt or property for fair consideration before it was levied upon; or
>
> 2. A transferee who acquired a debt or personal property not capable of delivery for fair consideration after it was levied upon without knowledge of the levy.

Subject to the two stated exceptions, the delivery of an execution to the sheriff will effect a lien that is superior to the rights of all other transferees. In the present instance, the levied account was an asset of the debtor, and no third party had acquired that asset prior to the levy. Of no relevance, therefore, is the first exception, which deals with rights arising from a pre-execution transfer. Under New York law, deposits in a bank account are not cash, but a debt owed to the depositor. *Sundail Construction Co. v. Liberty Bank of Buffalo*, 277 N.Y. 137, 13 N.E.2d 745 (1938), 9 N.Y. Jur.2d *Banks* § 238 (1980). As "a debt or personal property not capable of delivery", the debtor's levied account is the type of asset to which the second exception refers. Here, the sheriff took possession of the account prior to an acquisition by any party without knowledge of Perfetti's interest. Accordingly, there is no competing transferee who might assert a priority of interest by reason of the second exception. Nonetheless, in our consideration of perfection under 11 U.S.C. § 547(e)(1)(B), the issue remains whether the New York statute would accord priority to any form of judicial lien that a creditor might acquire on a simple contract.

With respect to an involuntary transfer of an interest in the Lake Shore account,

510

subdivision (b) of CPLR 5234 establishes two tests for priority as among competing lienors.[1] The first is that when multiple executions are delivered to the same enforcement officer, those executions are to be satisfied in the order in which they are delivered. Because Perfetti was the first creditor to deliver an execution to the Chautauqua County sheriff, its lien takes priority over any other execution delivered to the same sheriff. When executions are delivered to different enforcement officers, the statute's second test requires that the proceeds "be first applied in satisfaction of the execution or order of attachment delivered to the officer who levied." Because the Chautauqua County sheriff was the only enforcement officer who had levied upon the debtor's account as of the ninetieth day prior to the bankruptcy filing, Perfetti's lien would also take priority against another judgment creditor who might have delivered an execution to a different enforcement officer. The only further exception in CPLR 5234 to the priority of Perfetti's lien is an execution for child support. That limited exception, however, impacts not at all upon the operative standard of 11 U.S.C. § 547(e)(1)(B), that a transfer of personal property "is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." The court concludes, therefore, that the transfer of the debtor's interest in the account at Lake Shore Savings & Loan

Association was perfected prior to the time during which a transfer could become a target for attack as a preference.

The trustee urges reliance upon the decision of the Seventh Circuit Court of Appeals in *Matter of Freedom Group, Inc.*, 50 F.3d 408 (1995). As in the present instance, that case arose from an adversary proceeding to recover an allegedly preferential transfer that resulted from an attachment of the debtor's bank account. The Circuit Court held, in the context of Indiana law, that no transfer occurred until issuance of a final order of attachment, after delivery of funds. Central to this result was a recognition that the Bankruptcy Code "looks to state law for the definition of 'property' and 'interest in property.'" 50 F.3d at 410, *quoting Barnhill v. Johnson*, 503 U.S. 393, 397–98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). Therein lies the critical basis for distinction with the instant matter. Under Indiana law,

[t]he notice of garnishment is like a preliminary injunction.... It seeks to protect a creditor against the irreparable harm that will ensue if the debtor dissipates funds needed to pay the creditor. It does this by freezing funds owed to the debtor (as by the bank that was the garnishee in this case), so that they will be available to the creditor if and when he establishes his right to them.

50 F.3d at 411. In contrast, under New York law, a judgment creditor acquires a

1. The relevant text of CPLR 5234 sub.(b) reads as follows:

Where two or more executions or orders of attachments are issued against the same judgment debtor or obligor and delivered to the same enforcement officer or issued by the support collection unit designated by the appropriate social services district, they shall be satisfied out of the proceeds of personal property or debt levied upon by the officer or by the support collection unit in the order in which they were delivered, such executions for child support shall have priority over any other assignment, levy or process. Where two or more executions or orders of attachment are issued against the

same judgment debtor or obligor and delivered to different enforcement officers, and personal property or debt is levied upon within the jurisdiction of all of the officers, the proceeds shall be first applied in satisfaction of the execution or order of attachment delivered to the officer who levied, and thereafter shall be applied in satisfaction of the executions or orders of attachment delivered to those of the other officers who, before the proceeds are distributed, make a demand upon the officer who levied, in the order of such demands, except that such executions for child support shall have priority over any other assignment, levy, or process.

lien on personal property as of the moment that an execution is delivered to the sheriff. This distinction explains the differing outcome in the instant case. When, as in Indiana, a notice of garnishment operates only as a preliminary injunction, no property rights are ultimately transferred until a later stage in the collection process.[2] But in New York, the delivery of an execution to the sheriff creates a lien in personal property, and thereby effects the transfer of an interest in that property. For debts or property not capable of delivery, this transfer is then perfected when the sheriff serves notice of levy upon the garnishee.[3] Because the sheriff served the notice of levy more than ninety days prior to the bankruptcy filing, the transfer in the present instance occurred beyond the preference period.

Based upon the foregoing, the trustee's motion to dismiss the defendant's fourth affirmative defense is denied. The defendant's cross motion to dismiss the complaint is properly treated as a motion for summary judgment, and as such, is hereby granted.

So ordered.

---

**2.** At one point in its decision in *Matter of Freedom Group, Inc.*, the Seventh Circuit indicates that under Indiana law, a notice of garnishment also creates a lien, 50 F.3d at 410. This statement is inconsistent with the court's subsequent indication that the notice has only injunctive effect. In my view, the creation of a lien is itself a property transfer which, if superior to subsequent judicial liens,

becomes a perfected transfer within the contemplation of 11 U.S.C. § 547(e)(1)(B).

**3.** Compare this result with the rule for perfection of a lien in property that is capable of delivery. For such property, the lien is perfected when the sheriff takes the property into custody. *See* CPLR 5232 sub.(b).